UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHEILA C.,

                      Plaintiff,

v.                                                                                          CASE # 20-cv-00739

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | AMY C. CHAMBERS, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | GRAHAM MORRISON, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED,** and the decision of the Commissioner is **AFFIRMED**.

I.  **RELEVANT BACKGROUND**

A.  **Factual Background**

Plaintiff was born on November 18, 1969 and has at least high school education. (Tr. 832, 2107). Generally, plaintiff's alleged disabilities at the time of application were back problems, depression, claustrophobia, carpal tunnel syndrome, posttraumatic stress disorder, hypothyroidism, and fibromyalgia. (Tr. 174). She subsequently also alleged disability due to being struck as a pedestrian by a motor vehicle. Her alleged onset date of disability is September 1, 2009, and her date last insured September 30, 2012. (Tr. 171).

B.  **Procedural History**

On June 18, 2010, plaintiff applied for a period of Disability Insurance Benefits (SSD) under Title II of the Social Security Act and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act[1]. (Tr. 150-160, 2095). Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On December 16, 2011, plaintiff appeared before ALJ William Weir. (Tr. 47-78). On April 26, 2012, ALJ Weir issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 646-61). The Appeals Council (AC) denied plaintiff's request for review however the case was remanded by this Court on September 9, 2015. (Tr. 688-705). Plaintiff appeared before ALJ Weir for a subsequent hearing on December 30, 2016. (Tr. 555-610). ALJ Weir considered the case de novo and issued another unfavorable decision on April 24, 2017. (2238-55). This Court remanded the case back to the ALJ for further administrative proceedings on May 31, 2019. (Tr. 2224-31). On February 3, 2020, plaintiff appeared before ALJ Stephen Cordovani who issued an unfavorable decision on February 14, 2020. (Tr. 2135-234).

---

[1] Plaintiff also filed subsequent Title XVI applications on January 15, 2015, and March 27, 2019, which were consolidated with the prior concurrent claim file. (Tr. 672, 820-36, 2095-96).

**C.     The ALJ's Decision**

Generally, in his decision, ALJ Cordovani made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: alcohol dependence, chronic obstructive pulmonary disease ("COPD"), a history of right ankle fracture, degenerative disc disease of the lumbar spine, fibromyalgia, and, since October 18, 2018, a closed fracture of the right humerus, migraines/post-concussion syndrome, and some bilateral loss of far visual acuity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

5. After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorder, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can: occasionally climb ramps and stairs; occasionally kneel, crouch, crawl; can never climb ladders, ropes or scaffolds; cannot work around hazards such as unprotected heights or dangerous moving mechanical parts; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; cannot be exposed to extreme heat, cold, wetness or humidity; cannot perform work requiring far acuity; can understand, remember and carry out simple instructions and tasks; is able to work in a low stress work environment reflected by simple, unskilled work, no supervisory duties, no independent decision-making or goal setting, no production rate pace, and minimal changes in work routine and processes; can have occasional interaction with supervisors and co-workers, but no or only incidental interaction with the general public and no team or tandem work; and will be off task greater than 10% of the work day and absent from work greater than one day per month on average.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 18, 1969, and was thirty-eight-years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. As of

November 17, 2019, the claimant has been an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

12. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

13. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she can: occasionally climb ramps and stairs; occasionally kneel, crouch, crawl; can never climb ladders, ropes or scaffolds; cannot work around hazards such as unprotected heights or dangerous moving mechanical parts; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants; cannot be exposed to extreme heat, cold, wetness or humidity; and cannot perform work requiring far acuity.

14. If the claimant stopped the substance use, she would be able to perform past relevant work (20 CFR 404.1565 and 416.965).

15. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

16. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566. 416.960(c), and 416.966).

17. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 2092-118).

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes two arguments in support of her motion for judgment on the pleadings. First, the ALJ failed to properly consider evidence of multiple conditions and limiting effects at step two and subsequent sequential steps resulting in unsupported RFC findings and frustrating meaningful court review. Second, the ALJ improperly evaluated opinions and evidence using selective reading which resulted in unsupported RFC findings. (Dkt. No. 20 at 3 [Plaintiff's Memo of Law]).

### B.     Defendant's Arguments

Defendant responded to plaintiff's arguments. (Dkt. No. 21 [Defendant's Memo of Law]). First, defendant asserts the ALJ properly considered plaintiff's severe and non-severe impairments. (*Id*. at 13). Second, the RFC determination was supported by substantial evidence. (*Id*. at 11).

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial

evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

When there is medical evidence of a plaintiff's drug or alcohol abuse (DAA), the disability inquiry does not end with the five-step analysis. *See* 20 C.F.R. § 416.935(a). The ALJ must determine whether the plaintiff would still be disabled if she stopped using drugs or alcohol. *Id*. § 416.935(b)(1); *see also id*. § 416.935(b)(2)(i) ("If [the Commissioner] determine[s] that [ the plaintiff's] remaining limitations would not be disabling, [he] will find that [the] drug addiction or alcoholism is a contributing factor material to the determination of disability."). Plaintiffs bear the burden of proving DAA immateriality. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

### IV. ANALYSIS

#### A. Step Two and DAA Analysis

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Desmond v. Astrue*, No. 11-cv-0818, 2012 WL 6648625, at *3 (N.D.N.Y.

Dec. 20, 2012) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The severity prong is intended as a de minimis standard. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995) (holding that the severity regulation is valid only if applied to screen out de minimis claims). Of importance, courts in the Second Circuit have held that "[a] finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Juarbe v. Astrue*, 3:10-cv-1557, 2011 WL 4542964, at *6 (D.Conn. Aug. 30, 2011), report and recommendation adopted, 2011 WL 4542962 (D.Conn. Sept. 28, 2011) (quoting *Rosario v. Apfel*, No. 97-cv-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)) (internal quotation marks omitted).

ALJ Cordovani found plaintiff's bipolar disorder, posttraumatic stress disorder (PTSD), and major depressive disorder as not severe because of substance use and in doing so concluded:

> It is apparent from the same evidence that alcohol abuse/dependence disorder is her predominant mental impairment and the focus of the treatment she has received. Further, in the absence of substance abuse, the claimant's remaining mental impairments would not result in significant work related functional limitations. (Tr. 2100).

ALJ Cordovani later summarized in his lengthy initial Step Two finding:

> The claimant's mental health treatment records, the opinions of treating, examining and reviewing sources, and the claimant's own testimony all support the conclusion that when the claimant stops abusing alcohol her remaining mental impairments do not significantly impact her functioning. Accordingly, I find bipolar disorder, PTSD and major depressive disorder to be nonsevere impairments. (Tr. 2103).

The ALJ additionally addressed the B criteria for all mental impairments, including listings 12.04, which pertains to depressive, bipolar and related disorders, or listing 12.15, which pertains to trauma- and stressor-related disorders. (Tr. 2100-04).

Where the record establishes the presence of multiple impairments, and the ALJ finds at step two that some impairments (but not others) are severe, thereby allowing plaintiff's claim to

proceed through the sequential evaluation process, any error in the ALJ's severity analysis must be considered harmless. *See Stanton v. Astrue,* 370 F. App'x 231, 233 n. 1 (2d Cir.2010); *Webb v. Colvin,* 2014 WL 3389369, at *5 (W.D.N.Y. July 10, 2014). As discussed above, in this case the ALJ found multiple severe impairments at step two, including treatment notes containing the diagnosis of mental disorders in order to determine whether plaintiff's mental impairments, alone or in combination, met or equaled the criteria of the Listings. ALJ Cordovani proceeded through the five steps of the sequential evaluation followed by all the steps of the secondary DAA analysis. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, 416.923 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity").

Furthermore, even if the ALJ had found the other mental health diagnosis severe at the initial step two finding, it was clear from ALJ Cordovani's analysis that the impairments would not be found severe in the secondary analysis when considering the severe impairments without DAA. (Tr. 2100-02). SSR 13-2p, 2013 WL 621536 at *9. ALJ Cordovani found plaintiff's substance abuse to be material to the disability determination and plaintiff did not satisfy her burden of proving she was disabled in the absence of drug and or alcohol abuse. *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir.2010) (finding harmless error where the ALJ's consideration of a doctor's report would not have changed the ALJ's adverse determination). Plaintiff has only alleged the impairments should have been severe but does not offer evidence for how the RFC did not account for the allegedly severe impairments.

The plaintiff also did not demonstrate that her psoriatic arthritis, carpal tunnel syndrome, arm pain, or any other physical condition would support restrictions beyond which the ALJ found in the RFC. (Dkt. No. 20 at 16-17). ALJ Cordovani assessed the severity of all impairments and dutifully assessed the plaintiff's RFC.  The ALJ noted that Dr. Callahan diagnosed plaintiff with carpal tunnel syndrome and subsequently performed release surgery on May 9, 2011 and reported symptoms had resolved at an appointment in May 2012. (Tr. 1056, 2099). Subsequent EMG testing did not show any evidence of carpal tunnel syndrome. (Tr. 2827-28). Plaintiff complained of psoriasis, but the ALJ noted that it was treated with Humira with good success and that the treating dermatologist, Dr. Amarante, documented she was doing well on medication and had near resolution of her condition. (Tr. 2099, 3188). Likewise, the ALJ properly considered the impact of plaintiff's motor vehicle accident injuries in October 2018 and determined that plaintiff experienced improvement within a 12-month period from injuries sustained. (Tr. 2103). In fact, by November 2018, her doctors reported that she was ambulating independently, her pain was well controlled, and she was stable for discharge. (Tr. 2652). Substantial evidence supports the ALJ's assessment of non-severe physical impairments but as discussed above, the ALJ had continued through the sequential evaluation.

**B. Opinion Evidence**

Plaintiff argues the ALJ did not properly weigh the opinion evidence nor adequately consider cane use, and failed to include visual acuity limitations. (Dkt. No. 20 at 25-27). Plaintiff first argues the ALJ did not properly identify and weight the opinions from Dr. Kahn. Indeed, the ALJ referenced the opinions of Dr. Khan but did not expressly state the source. (Tr. 2113-17). However, ALJ Cordovani discussed why the opinions were given only some weight, including

that the opinions did not offer functional limits and were more narrative about the inability to work. (Tr. 2117). The ALJ accorded some weight to the findings as generally consistent with the mental health and consultative examiner opinions but little weight to the physical limits as the opinion was rendered shortly after the motor vehicle accident. (*Id.*). Dr. Khan's opinion consisted of a pre-printed employability form for the Department of Social Services and reflected treatment that had only started after the October 20, 2018 accident. While the discussion of the opinion did not identify Dr. Khan by name, the evidence as a whole supported the weight given and this Court will affirm the Commissioner's decision if a "searching review of the record" assures the court "that the substance of the treating physician rule was not traversed." *Estrella v. Berryhill,* 925 F.3d 96 (2d Cir. 2019)(citing *Halloran*, 362 F.3d at 32).

The RFC does not reflect any ambulatory restrictions due to the use of a cane, however plaintiff alleges it is medically necessary and the ALJ erred by not including limitations. (Dkt. No. 20 at 25-26). It is well-established that the ALJ has both the ability and the responsibility to resolve conflicts in the evidence and to weigh all of the available evidence to make an RFC finding that is consistent with the record as a whole. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Plaintiff testified to the use of a cane however substantial evidence supports the ALJ's conclusion that the cane was not necessary and did not limit the RFC. Medical records reveal that plaintiff only used a cane outside in unfamiliar territory, mainly for mental comfort. (Tr. 3581). Records also reflect many findings of a normal gait. (Tr. 245, 304, 1050 ("Gait/station: normal"), 1090 (same), 1100 ("normal gait"), 1115 ("normal gait"), 1120, 1147, 1169 ("gait is steady, at a normal pace"), 1241, 1242, 1244, 1246, 1248, 1250, 1252, 1257, 1264, 1274, 1275, 1354, 1447, 2562, 2564, 2566, 2642, 2700, 2712, 2724, 3375 ("gait is steady, at a normal pace, without difficulty"), 3382 (same), 3403, 4123 ("normal posture and gait"), 4152 ("she walks with a steady gait…").

More significantly, even if a cane was required for ambulation, the vocational expert testified that plaintiff could still perform multiple sedentary occupations. (Tr. 2188).

Plaintiff also contends the ALJ did not explain or account for any visual limitations in the RFC. (Dkt. No. 20 at 27). However, it is apparent from ALJ Cordovani's RFC that this argument is meritless because the RFC limits plaintiff to no work requiring far acuity. (Tr. 2110). The ALJ extensively discussed the vision findings and testimony regarding her ability to crochet, use her cellphone, and other tasks that required near visual acuity, thereby specifying the opined general visual acuity limitations that were supported by substantial evidence. (Tr. 2106).

Lastly, plaintiff again objects to the weight accorded to the medical opinions by ALJ Cordovani. (Dkt. No. 20 at 28). It is well settled that the ALJ is tasked to consider all relevant medical and other evidence, including any statements about what plaintiff can still do provided by any medical sources. *See* 20 C.F.R. §§ 416.945(a), 416.927(d)(2), 416.945(a)(3), 416.946(c). As stated above, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"). To this end, the ALJ possesses the authority to reject those portions of a medical opinion that are not supported by and even contrary to, the objective evidence of record, while accepting those portions that are supported by the record. *See Veino*, 312 F.3d at 588. Because substantial evidence in the record supports the ALJ's determination, the ALJ's decision is affirmed. *See DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)(Commissioner's decision affirmed where substantial evidence exists for both sides). Plaintiff has not identified any error, legal or otherwise, that would merit remand.

**CONCLUSION**

**ACCORDINGLY, it is**

> **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 20) is **DENIED;** and it is further
>
> **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED.**

Dated: November 9, 2021  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge